[Cite as *State v. Wright*, 2018-Ohio-668.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No. L-16-1164

    Appellee                                         Trial Court No. CR0201502648

v.

Michah Tekere Wright                          **DECISION AND JUDGMENT**

    Appellant                                        Decided:  February 23, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Stephen D. Long, for appellant.

* * * * *

**JENSEN, J.**

## I.  Introduction

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, sentencing appellant, Michah Wright, to a total of nine years in prison after he was

found guilty of felonious assault, discharge of a firearm upon or over a public road or highway, and having weapons while under disability. Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On October 23, 2015, appellant was indicted in case No. CR15-2783. The indictment arose out of an incident that occurred eight days earlier, during which appellant allegedly shot another individual, Sim White, in the foot. Within the indictment, appellant was charged with one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, and one count of discharge of a firearm upon or over a public road or highway in violation of R.C. 2923.162(A)(3) and (C)(4), a felony of the first degree. Firearms specifications were also attached to each of the foregoing counts under R.C. 2941.145.

{¶ 3} Six days after the indictment was filed, appellant appeared for arraignment and entered a plea of not guilty. Counsel was appointed for appellant at this time. Appointed counsel submitted a demand for discovery with the trial court pursuant to Crim.R. 16 the following day. An additional request for discovery and a bill of particulars was filed on November 2, 2015. Defense counsel then filed a motion for funds to hire a criminal investigator the following day, which was granted by the trial court on November 9, 2015. The state filed its initial discovery response on November 18, 2015.

{¶ 4} On November 30, 2015, appellant appeared for trial, but moved the court to continue the trial. The court granted appellant's request and rescheduled the matter for

2.

trial on December 14, 2015. On that date, appellant filed a motion to suppress evidence obtained as a result of a search of his residence, as well as a motion to continue the trial date. The trial court granted the motion to continue and rescheduled the trial for January 25, 2016. The state responded to the motion to suppress on December 23, 2015, and a hearing on the motion was held on January 12 and 15, 2016. The January 25, 2016 trial date was then converted to a pretrial at the request of appellant, and the motion to suppress was taken under advisement by the trial court. At the pretrial hearing on January 25, 2016, appellant filed a written waiver of his speedy trial rights and consented to a trial date of February 29, 2016.

{¶ 5} On February 25, 2016, the trial court granted the state's request for a continuance of the trial date over appellant's objection, and the trial was rescheduled for March 7, 2016. According to the trial court's docket, the parties did not appear for trial on March 7, 2016. Rather, the parties appeared for a pretrial on March 29, 2016. One week prior, on March 22, 2016, the state filed another indictment in case No. CR16-1539, charging appellant with the same two counts as those that were contained in the prior indictment, along with attendant firearms specifications, as well as the addition of a repeat violent offender specification attached to the felonious assault charge and a charge of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree. As a result of the reindictment, the state dismissed the charges in case No. CR15-2783 on April 5, 2016. Per appellant's request, all pending motions, including appellant's motion to suppress, were transferred to case No. CR16-1539.

3.

{¶ 6} On April 8, 2016, appellant filed a motion to dismiss with the trial court, in which he argued that his speedy trial rights were violated insofar as he was not brought to trial within the statutory time limit found in R.C. 2945.71(C). After receiving the state's response to the motion to dismiss, the trial court denied the motion on May 6, 2016.

{¶ 7} Three days later, appellant again moved the trial court for a continuance, which the trial court granted. Pursuant to appellant's request, the trial date was rescheduled for June 13, 2016. On June 9, 2016, the trial date was further postponed by the trial court, sua sponte. A three-day jury trial finally commenced on June 27, 2016.

{¶ 8} As one of its witnesses, the state called Sim White. During White's testimony, the state questioned him as to a hole that was found in one of his shoes, which was created when a bullet fragment entered the shoe. The state introduced the shoe into evidence and market it as an exhibit. During the state's closing arguments, the state referenced the shoe and placed a paperclip into the shoe where the bullet fragment was located. Appellant's counsel objected to the state's use of the paperclip, and the following exchange took place:

> THE COURT: What's your objection?
>
> [DEFENSE COUNSEL]: My objection is this, Your Honor. I do not know the size of anything that would have gone through the hole, if there was a hole. He's inserted an object that was not involved in this shoe in any form or fashion prior to it coming to the court. Paperclip had nothing to do with the shoe any time during this trial.

4.

If this was done and it was done yesterday afternoon, whereby the State had access to the evidence –

THE COURT: I think did you just do it now?

[THE STATE]: I did it once yesterday, and I did it once today. I did it once today.

THE COURT: Was it there?

[THE STATE]: I put this in now.

THE COURT: He just did it now for the jury. Okay. Go ahead.

[DEFENSE COUNSEL]: Well, the point I'm making I that yesterday when the State took this evidence that had been admitted into evidence down to the – assuming down to the prosecutor's office –

[THE STATE]: No. It was done in the courtroom this morning. I did it in the custody and in the witness of the court reporter who had custody of the shoe.

[DEFENSE COUNSEL]: Okay. All right. I understand that. But you conducted an experiment on a piece of evidence that had been admitted.

[THE STATE]: I'm sorry.

[DEFENSE COUNSEL]: Can I finish? Thank you. You conducted an experiment on a piece of evidence ex parte, the defense. You took it upon yourself to, as you indicated, yesterday afternoon stick a paperclip

5.

through this defect in the shoe. I don't know whether it went all the way through yesterday. I didn't see it.

[THE STATE]: I know that it did.

THE COURT: Okay.

[DEFENSE COUNSEL]: I know that you're telling me that now.

THE COURT: Here's the thing. What I would say for the record is that the State took a paperclip, partially straightened it out and inserted it through the obvious defect in the rubber sole of the shoe to the inside of the shoe where the foot would be. And because of the nature of this straightened-out paperclip, it's similar to a needle which could go through it even if there wasn't a hole.

So I'm finding that this line of argument is not justified and telling counsel for the State to move onto a different line or argument. If you were to talk about the hole and there being a defect, do so, but not with using a straightened-out paperclip.

{¶ 9} Following the foregoing exchange, defense counsel asked the trial court to provide a curative instruction concerning the state's use of the paperclip. The trial court then instructed the jury to "disregard those very latest arguments relative to the paperclip as it relates to Mr. Sim's shoe." The state then proceeded with its closing arguments.

{¶ 10} At the conclusion of the closing arguments, the jury was instructed and began its deliberations. Thereafter, the jury returned guilty verdicts to the three charges and the attendant specifications contained in the indictment. The court then continued the

6.

matter for sentencing and ordered the preparation of a presentence investigation report. Ultimately, the court sentenced appellant to six years in prison on the felonious assault charge, six years on the charge for discharge of a firearm upon or over a public road or highway, and 30 months on the charge for having weapons while under disability. The court ordered these sentences to be served concurrent to one another. The court then merged the two firearms specifications, and imposed the mandatory consecutive sentence of three years as to those specifications. In sum, appellant was ordered to serve a prison sentence of nine years. Thereafter, appellant filed his timely notice of appeal.

## B. Assignments of Error

{¶ 11} In his brief to this court, appellant presents the following assignments of error:

A. The trial court erred in failing to declare a mistrial based on the prosecution's tampering with evidence before and during closing arguments.

B. Imposition of a sentence for the "discharge of a firearm upon or over a highway" with the addition of an enhancement of the sentence with a "firearm specification" is a double punishment for the same conduct and, thus, a violation of [the] double jeopardy clause of the United States and Ohio Constitution and a violation of substantial due process.

C. The trial court erred, as a matter of law, by denying appellant's motion to dismiss based upon his speedy trial rights being violated and for

7.

failing to dismiss the case after appellant was reindicted with the additional charge of [having] weapons under a disability.

D. The trial court committed reversible error by failing to dismiss the charges against the appellant after the state of Ohio failed to preserve probative relevant exculpatory evidence.

E. Appellant was denied the effective assistance of counsel where counsel failed [to] renew the motion to dismiss for speedy trial violation and failure to move to dismiss for failure to preserve exculpatory evidence.

## II. Analysis

### A. Closing Arguments

{¶ 12} In his first assignment of error, appellant argues that the trial court erred in failing to declare a mistrial based upon the state's handling of White's shoe during its closing arguments.

{¶ 13} "The Ohio Supreme Court has declared that '[a] mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties.'" *State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 12, quoting *Tingue v. State*, 90 Ohio St. 368, 108 N.E. 222 (1914), syllabus. "Moreover, '[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'" *Id.*, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

8.

{¶ 14} Review of a trial court's decision denying a motion for mistrial ordinarily falls under an abuse of discretion standard. *State v. Rossbach*, 6th Dist. Lucas No. L-09-1300, 2011-Ohio-281, ¶ 39, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). Here, however, appellant failed to move for a mistrial. Thus, the trial court's refusal to declare a mistrial is reviewed under plain error analysis. *Id.* In *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240, the Supreme Court of Ohio articulated the following three-part test for finding plain error:

First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. *Id.* at 27 (internal citations omitted).

{¶ 15} An appellate court should only take notice of plain error under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990).

{¶ 16} Here, appellant contends that the trial court should have declared a mistrial after the state inserted a paperclip into White's shoe during its closing argument. Appellant insists that the state's act of inserting the paperclip into the shoe constituted an "experiment" that broke the chain of custody. Further, appellant asserts that the state's conduct affected the fairness of the trial by altering the shoe to fit the state's theory that

9.

appellant intentionally shot at White rather than the injury resulting from an unintended ricochet. Under these circumstances, appellant argues that the trial court should have cautioned the jury to judge the credibility of the shoe as a piece of evidence in light of the alterations made to the shoe by the state, rather than simply providing a curative instruction for the jury to disregard the state's arguments related to the shoe.

{¶ 17} At the outset, we highlight the fact that the jury was instructed to disregard the state's argument concerning the paperclip that was inserted into White's shoe. A jury is presumed to follow such an instruction. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). We find that appellant has not overcome this presumption. Further, we conclude that the court's curative instruction eliminated any prejudice that could have flowed from the state's alleged alteration of the shoe.

{¶ 18} Notably, appellant has failed to point to any evidence of actual alteration in the record. Indeed, while the trial court explained that the paperclip was capable of altering the shoe, it did not make a finding that the shoe was in fact altered, nor has appellant demonstrated such alteration. Regardless, the remaining incriminatory evidence contained in the record belies any claim of prejudice appellant might advance. The state's witnesses consisted of individuals that were present on the scene and witnessed appellant firing a weapon. The testimony establishes that appellant was the only individual with a firearm at the time of the shooting. Further, two of the state's witnesses actually saw appellant shoot White.

{¶ 19} In light of the curative instruction that was provided to the jury, as well as the incriminating evidence that was presented by the state in this case, we find that

10.

appellant was not prejudiced by the trial court's failure to sua sponte declare a mistrial. The state's alleged alteration of White's shoe did not deprive appellant of a fair trial, and appellant has failed to establish plain error in the trial court's handling of the matter. Accordingly, appellant's first assignment of error is not well-taken.

## B. Firearm Specifications

{¶ 20} In his second assignment of error, appellant contends that his due process rights, as well as constitutional protections against double jeopardy, preclude the trial court's imposition of the mandatory three-year prison term on the firearm specification that was attached to his conviction for discharge of a firearm upon or over a highway.

{¶ 21} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 of the Ohio Constitution states: "No person shall be twice put in jeopardy for the same offense." The Double Jeopardy Clause protects against a number of abuses. *State v. Ruff*, 143 Ohio St. 3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. Pertinent to this case is the protection against multiple punishments for the same offense. *Id.* To that end, the General Assembly enacted R.C. 2941.25, which provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

11.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 22} The argument raised by appellant in his second assignment of error was addressed by the Ohio Supreme Court in *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498. In that case, the court found that a firearm specification is a penalty enhancement, not a criminal offense. *Id.* at paragraph one of the syllabus. Because a firearm specification is not an offense, it does not merge with its predicate offense under R.C. 2941.25, and can therefore be imposed in addition to the underlying charge. *Id.* at ¶ 19. Thus, the court held that the trial court properly sentenced the defendant for discharging a firearm at or into a habitation in addition to sentencing the defendant for the firearm specification. *Id.* at ¶ 20.

{¶ 23} On the authority of *Ford* and its progeny, we find that the trial court did not violate double jeopardy principles by imposing sentences as to both the firearm specification and the charge for discharge of a firearm upon or over a highway. Additionally, we find no merit to appellant's as-applied challenge, in which he contends that double jeopardy principles are violated when the predicate offense includes the use of a firearm as one of its elements. Notably, the predicate offense in *Ford* also included the use of a firearm as an element.

12.

{¶ 24} Accordingly, appellant's second assignment of error is not well-taken.

## C. Speedy Trial Rights

{¶ 25} In his third assignment of error, appellant asserts that the trial court erred in denying his motion to dismiss, which was premised upon the alleged violation of his right to a speedy trial.

{¶ 26} A trial court's decision denying a motion to dismiss based on an alleged violation of the speedy trial statutes presents a mixed question of law and fact. *State v. Rumer*, 6th Dist. Lucas No. L-07-1178, 2009-Ohio-265, ¶ 7, citing *State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (4th Dist.1998). While we accord reasonable deference to the trial court's findings of fact if supported by competent, credible evidence, we independently determine whether the trial court properly applied the law to the facts of the case. *Id.*

{¶ 27} R.C. 2945.71(C)(2) requires that the state bring a person charged with a felony to trial within 270 days after the person's arrest. If the person is held in jail, however, each day spent in jail counts as three days. R.C. 2945.71(E). Appellant was in custody during the pendency of this matter. Thus, the state was required to bring him to trial within 90 days of his arrest. Appellant was not brought to trial within 90 days of the date of his arrest, and therefore he has established a prima facie case for dismissal. *State v. Arrington*, 6th Dist. Erie No. E-16-050, 2017-Ohio-2578, ¶ 14.

{¶ 28} Because appellant has made a prima facie case for dismissal, the burden shifted to the state to demonstrate that sufficient time was tolled or extended pursuant to R.C. 2945.72 such that no violation occurred. *State v. Hohenberger*, 189 Ohio App.3d 13.

346, 2010-Ohio-4053, 938 N.E.2d 419, ¶ 35 (6th Dist.).  In calculating the speedy trial

time, and considering the possible extensions of that time, the provisions of R.C. 2945.72

are to be strictly construed against the state.  *State v. Singer*, 50 Ohio St.2d 103, 108-109,

362 N.E.2d 1216 (1977).

{¶ 29} "R.C. 2945.72 contains an exhaustive list of events and circumstances that

extend the time within which a defendant must be brought to trial."  *State v. Ramey*, 132

Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 24.  Of particular relevance here,

R.C. 2945.72(E) operates to toll the speedy trial clock for any period of delay caused by a

motion filed by the accused.  Further, R.C. 2945.72(H) tolls the clock for any period of

delay brought about by the continuance of the trial date at the request of the accused.

{¶ 30} We have examined the record in this matter with the foregoing provisions in mind.

The timeline of events in this case is as follows:

| Date: | Party | Nature of Filing | Total Days Elapsed |
|---|---|---|---|
| 10/15/2015 | State | Arrest | 0 |
| 11/02/2015 | Appellant | Request for Discovery and Bill of Particulars | 18 |
| 11/18/2015 | State | Discovery Response | 18 |
| 11/30/2015 | Appellant | Motion to Continue Trial | 30 |
| 12/14/2015 | Appellant | Motion to Suppress and Motion to Continue Trial | 30 |
| 01/25/2016 | Appellant | Limited Waiver of Speedy Trial Rights | 30 |
| 02/25/2016 | State | Motion to Continue Trial (motion to suppress remained pending) | 30 |
| 04/08/2016 | Appellant | Motion to Dismiss | 30 |
| 05/06/2016 | Court | Denial of Motion to Dismiss and Motion to Suppress | 30 |
| 05/09/2016 | Appellant | Motion to Continue Trial | 33 |
| 06/09/2016 | Court | Trial Date Postponed | 33 |
| 06/27/2016 | Court | Jure Trial Commences | 51 |

14.

**{¶ 31}** As is evident from an examination of this timeline, appellant filed several motions in this case that operated to toll the speedy trial clock under R.C. 2945.72. After deducting such tolling periods from the number of days that elapsed between appellant's arrest and his trial, we find that 51 days are chargeable to the state. Because appellant was brought to trial within the 90 day speedy trial period, his speedy trial rights were not violated and the trial court properly denied his motion to dismiss.

**{¶ 32}** Accordingly, appellant's third assignment of error is not well-taken.

### D.  Preservation of Exculpatory Evidence

**{¶ 33}** In his fourth assignment of error, appellant argues that the trial court erred in failing to dismiss the charges against him after the state failed to preserve probative relevant exculpatory evidence consisting of the bullet removed from White's foot.

**{¶ 34}** "[T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted of a crime where the state either fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence." (Internal citations omitted.) *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist.2000). The Supreme Court of Ohio has concluded that evidence is materially exculpatory "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991), quoting *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of syllabus.

15.

{¶ 35} In his brief to this court, appellant acknowledges that the medical records that were supplied during discovery contain numerous references to the bullet that was recovered from White's foot. Thus, appellant was aware of the existence of the bullet prior to trial. There is no evidence that the state wrongfully withheld the bullet from appellant during discovery. While the state did not enter the bullet into evidence at trial, there is no indication that it failed to disclose the bullet to appellant prior to trial.

{¶ 36} Accordingly, appellant's fourth assignment of error is not well-taken.

### E. Ineffective Assistance of Counsel

{¶ 37} In his fifth assignment of error, appellant contends that he was denied effective assistance of trial counsel.

{¶ 38} In order to demonstrate ineffective assistance of counsel, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must show that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694.

{¶ 39} In the case at bar, appellant argues that his counsel was ineffective for failing to renew the motion to dismiss that was premised upon alleged speedy trial violations, and failing to file a motion to dismiss based upon the state's failure to preserve the bullet from White's shoe. Because we have already concluded that appellant was brought trial within the 90-day speedy trial period and that his argument concerning the

16.

bullet from White's shoe lacks evidentiary support, we find no merit to appellant's ineffective assistance argument.

{¶ 40} Accordingly, appellant's fifth assignment of error is not well-taken.

### III. Conclusion

{¶ 41} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                            JUDGE
Thomas J. Osowik, J.

                                            _____
James D. Jensen, P.J.                       JUDGE
CONCUR.

                                            _____
                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.